**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AVERY PENN *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> ANTONY BLINKEN *et al.*, <br><br> *Defendants*. | Civil Action No. 21-1055 (TJK) |

**MEMORANDUM OPINION**

Plaintiffs, foreign K-1 visa applicants and their American spouses-to-be, sued the Secretary of State and related government officials, alleging that they unlawfully suspended and delayed the adjudication of their visa applications. Defendants moved to dismiss for lack of subject matter jurisdiction and failure to state a claim. For the reasons explained below, the Court will grant Defendants' motion.

I. **Background**

   A. **The K-1 Nonimmigrant Visa Process**

The K-1 nonimmigrant visa, also known as a "fiancé(e) visa," allows a foreigner to travel to the United States to marry an American citizen. *Visas for Fiancé(e)s of U.S. Citizens*, U.S. Citizenship & Immigr. Servs. (last updated Mar. 23, 2018), *available at* https://www.uscis.gov/family/family-of-us-citizens/visas-for-fiancees-of-us-citizens ("*Visas for Fiancé(e)s of U.S. Citizens*"). For a foreigner to obtain a K-1 nonimmigrant visa, his or her American spouse-to-be must file a Form I-129F, a Petition For Alien Fiancé(e). *Id.* But "[f]iling a petition is just the first step in the lengthy, multistep K-1 visa process." *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 90 (D.D.C. 2020).

If a State Department consular officer approves the I-129F petition, it is sent to the National Visa Center, which forwards it to the U.S. embassy or consulate in the country where the foreigner lives. *Visas for Fiancé(e)s of U.S. Citizens*. Afterward, a consular officer interviews the foreigner, who also must provide various documents. *Id.* The officer then determines whether the foreigner and his American spouse-to-be "have a bona fide intent to establish a life together and the marriage is not for the sole purpose of obtaining an immigration benefit." *Id.* If the application is granted, the foreigner may travel to the United States and the couple must marry within 90 days. *Id.* The two are then permitted to apply for lawful permanent resident status. *Id.*

### B. Presidential Proclamations and the National Interest Exceptions to Them

In response to the COVID-19 pandemic, President Trump issued several presidential proclamations that prohibited individuals from certain countries from entering the United States. *See* Proclamation No. 9984, 85 Fed. Reg. 6,709 (Jan. 31, 2020) (Republic of China); Proclamation No. 9992, 85 Fed. Reg. 12,855 (Feb. 29, 2020) (Iran); Proclamation No. 9993, 85 Fed. Reg. 15,045 (Mar. 11, 2020) (Schengen Area); Proclamation No. 9996, 85 Fed. Reg. 15,341 (Mar. 14, 2020) (United Kingdom and Ireland); Proclamation No. 10041, 85 Fed. Reg. 31,933 (May 24, 2020) (Brazil). On January 18, 2021, he rescinded several of the proclamations, *see* Proclamation 10138, 86 Fed. Reg. 6,799 (Jan. 18, 2021), but President Biden reinstituted many of these restrictions shortly after entering office, *see* Proclamation 10143, 86 Fed. Reg. 7,467 (Jan. 25, 2021); *see also* Proclamation No. 10199, 86 Fed. Reg. 24, 297 (Apr. 30, 2021).

These proclamations relied on the Immigration and Nationality Act, which authorizes the President to "suspend the entry of all aliens" into the United States "for such period as he shall deem necessary." 8 U.S.C. § 1182(f). The proclamations contained various exemptions, but foreign spouses-to-be were not included in them. *See, e.g.*, 85 Fed. Reg. at 6710–12. That said, the

2

proclamations did not apply to "any alien whose entry would be in the national interest, as determined by the Secretary of State." *Id.* at 6711.

The proclamations instructed the Secretary of State to implement the restrictions as they applied to visas "pursuant to such procedures as the Secretary of State, in consultation with the Secretary of Homeland Security, may establish." *See, e.g.*, 85 Fed. Reg. at 6711. At first, the State Department suspended the issuance of all visas. ECF No. 14 ¶ 71. But later, the Secretary of State granted all K-1 nonimmigrant visa applicants a national interest exception, so the restrictions no longer applied. *Id.* ¶ 44. Even when President Biden issued an additional proclamation in the wake of COVID-19 surges, the Secretary of State expanded the national interest exception to cover affected K-1 visa applicants. *See* ECF No. 11 at 10.

### C. The Instant Suit

Plaintiffs sued Secretary of State Antony Blinken, the State Department, the U.S. Consulate General Rio de Janerio, and Consul General Scott Hamilton. ECF No. 14 ¶¶ 22–25. Plaintiffs are American citizens and their foreign spouses-to-be who applied for K-1 nonimmigrant visas.[1] *Id.* ¶ 9. Each of their I-129F petitions were approved and they paid the relevant processing fees. *Id.* ¶ 9. At the time they sued, their visa applications were at various stages of processing at the U.S. Consulate in Rio de Janeiro, Brazil. *Id.* ¶¶ 10, 34. Plaintiffs allege that Defendants unreasonably delayed the adjudication of their applications (Count I). *Id.* ¶¶ 58–66. They also allege that Defendants exceeded their statutory authority by suspending the issuance of visas in response to the presidential proclamations, and that those actions were arbitrary and capricious under the Admin-

---

[1] Plaintiffs alleged in their Second Amended Complaint that they were 141 U.S. citizens and their foreign spouses-to-be. But it appears they consisted of only 138 such couples. *See* ECF No. 16-1 at 2 ¶ 3. Over time, several dozen were voluntarily dismissed from the case, leaving 84 such couples. *See* ECF Nos. 15, 17, 18, 20.

istrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.* (Count II). *Id.* ¶¶ 67–76. Finally, Plaintiffs ask this Court to "compel" Defendants to adjudicate their visas "without further delay." *Id.* ¶¶ 77–81 (Count III).

Defendants moved to dismiss Plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* ECF No. 9.

## II. Legal Standards

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). As federal courts are courts of limited jurisdiction, it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Thus, when faced with a motion to dismiss under Rule 12(b)(1), "the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." *Moran v. U.S. Capitol Police Bd.*, 820 F. Supp. 2d 48, 53 (D.D.C. 2011) (citing *Lujan v. Def. of Wildlife*, 504 U.S. 555, 561 (1992)). In reviewing such a motion, while the Court is not limited to the allegations in the complaint and may consider materials outside the pleadings, the Court must "accept all of the factual allegations in [the] complaint as true." *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005) (alteration in original) (quoting *United States v. Gaubert*, 499 U.S. 315, 327 (1991)).

"A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a plaintiff's complaint; it does not require a court to 'assess the truth of what is asserted or determine whether a plaintiff has any evidence to back up what is in the complaint.'" *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)). "In evaluating a Rule 12(b)(6) motion, the Court must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d

605, 608 (D.C. Cir. 1979)). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "While a court generally does not consider matters beyond the pleadings for a motion to dismiss, it may consider 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss.'" *Wang v. Pompeo*, No. 18-cv-1732 (TSC), 2020 WL 1451598, at *3 (D.D.C. Mar. 25, 2020) (cleaned up). A court may also consider matters of which it can take judicial notice. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 625 (D.C. Cir. 1997).

## III.   Analysis

Defendants say this case must be dismissed for three reasons. First, they argue that the claims asserted by plaintiffs whose visa applications have since been adjudicated are moot. ECF No. 9-1 at 21. Second, they contend that Plaintiffs lack standing to challenge the State Department's decision to suspend issuing visas. *Id.* at 21–24. Third, they say that Plaintiffs' unreasonable delay claim fails as a matter of law. *Id.* at 24–36. The Court largely agrees with Defendants and, for the reasons explained below, will dismiss the case.

### A.   Plaintiffs Whose Visa Applications Have Been Adjudicated

"Article III, Section 2 of the Constitution permits federal courts to adjudicate only actual, ongoing controversies." *United Bhd. of Carpenters & Joiners of Am., AFL-CIO v. Operative Plasterers' & Cement Masons' Int'l Ass'n of the U.S. & Canada, AFL-CIO*, 721 F.3d 678, 687 (D.C. Cir. 2013) (quoting *McBryde v. Comm. To Rev. Cir. Council Conduct & Disability Orders of the Jud. Conf. of the U.S.*, 264 F.3d 52, 55 (D.C. Cir. 2001). "If events outrun the controversy such

that the court can grant no meaningful relief, the case must be dismissed as moot." *McBryde*, 264 F.3d at 55.

The Court will dismiss as moot all claims asserted by the foreign plaintiffs whose visa applications have already been adjudicated, as well as the associated claims of their American spouses-to-be.[2] Two of these plaintiffs' claims (Counts I and III) concern Defendants' alleged failure to adjudicate their K-1 nonimmigrant visa applications. But Defendants have now adjudicated their applications. *See* ECF No. 16-1. So, for those two claims, these plaintiffs have received the precise relief they sought. *See Dvorak v. DHS*, No. 18-cv-1941 (DLF), 2019 WL 1491743 (D.D.C. Apr. 3, 2019) (dismissing as moot claims requesting the adjudication of visa applications after they were approved or denied); *Abbas v. DHS*, No. 1:20-cv-03192 (CJN), 2021 WL 3856625 (D.D.C. Aug. 29, 2021) (same).

The other claim brought by these plaintiffs (Count II) challenges Defendants' implementation of the presidential proclamations. But a favorable decision on that claim would not "presently affect" those whose visa applications have been adjudicated, nor would it "have a more-than-speculative chance of affecting them in the future." *Transwestern Pipeline Co. v. FERC*, 897 F.2d 570, 575 (D.C. Cir. 1990); *see also Filazapovich v. Dep't of State*, --- F. Supp. 3d ---- , 2021 WL 4127726, at *14–15 (D.D.C. Sept. 9, 2021) (dismissing as moot all claims brought by plaintiffs whose visa applications had been adjudicated); *Aboutalebi v. Dep't of State*, No. 19-cv-2605

---

[2] Defendants also point out that foreign plaintiff Fernanda Ribeiro had her visa interview scheduled. ECF No. 16-1 ¶ 3. But an interview is not an adjudication, which is what Plaintiffs seek in their operative complaint. *See* ECF No. 14 at 40. Thus, Ribeiro and her fiancé have yet to receive the relief they requested, and their claims are not moot.

(TJK), 2019 WL 6894046, at *2 (D.D.C. Dec. 18, 2019) (finding an APA challenge to the interview process moot when the plaintiff's visa application had been adjudicated). Thus, these claims are moot as well.

In sum, the foreign plaintiffs whose visa applications have been adjudicated and their American spouses-to-be have no "legally cognizable interest in the outcome" of the case; all their claims are moot and must be dismissed because this Court lacks jurisdiction over them. *Dvorak*, 2021 WL 1491743 at *1 (quoting *Schmidt v. United States*, 749 F.3d 1064, 1068 (D.C. Cir. 2014)).

### B. Plaintiffs Whose Visa Applications Have Not Been Adjudicated

Plaintiffs whose applications have *not* been adjudicated face other problems. For the reasons explained below, their claims must be dismissed as well.

#### 1. These Plaintiffs Lack Standing to Challenge the Presidential Proclamations (Count II)

To establish the "irreducible constitutional minimum" of standing, a plaintiff must show that she has "(1) an 'injury in fact' that is 'concrete and particularized' as well as 'actual or imminent'; (2) a 'causal connection' between the injury and the challenged conduct; and (3) a likelihood, as opposed to mere speculation, 'that the injury will be redressed by a favorable decision.'" *Ark Initiative v. Tidwell*, 749 F.3d 1071, 1075 (D.C. Cir. 2014) (quoting *Lujan*, 504 U.S. at 560–61). These factors are "assessed at the time of filing." *Wheaton Coll. v. Sebelius*, 703 F.3d 551, 552 (D.C. Cir. 2012).

These plaintiffs cannot make the requisite showing to challenge Defendants' implementation of the presidential proclamations. To begin with, when they sued, these plaintiffs were not suffering from any injury caused by the implementation of the proclamations. They filed their initial complaint on April 15, 2021—*after* the Secretary of State granted visa applicants a national interest exception to the presidential proclamations on April 8, 2021. ECF No. 11 at 8. So while

7

they alleged that Defendants' implementation of the presidential proclamations "suspend[ed] the issuance of K visas" and thus "prevent[ed] K visa applicants from pursuing a visa," these injuries did not exist when they sued, because the proclamations did not apply to them at that time. *See* ECF No. 14 ¶ 71–72. For this reason, these plaintiffs lack standing.

In addition, the Court cannot order relief that would redress any harm these plaintiffs suffered on account of the proclamations. They request that the Court address Defendants' unlawful implementation of the proclamations by "order[ing] the Department of State to resume issuing and reissuing visas to Plaintiffs and resume adjudication of all K visa applicants." ECF No. 14 ¶ 76. But the State Department has already resumed issuing and reissuing visas, and adjudicating K visa applications. On this front, there is nothing else the Court could order Defendants to do. *See Kinsley v. Blinken*, No. 21-cv-962 (JEB), 2021 WL 4551907, at *5 (D.D.C. Oct. 5, 2021). For this additional reason, these plaintiffs have no standing.

Plaintiffs respond by invoking the doctrines of "voluntary cessation" and "capable of repetition, yet evading review." ECF No. 10 at 12–16. But these doctrines do not apply here. Both are "exceptions to the *mootness doctrine*" and "do not extend to standing." *Brookens v. Am. Fed'n of Gov't Emps.*, 315 F. Supp. 3d 561, 568 (D.D.C. 2018) (emphasis added). Plaintiffs suggest that the problem with their proclamations claim is really one of mootness, not standing, so these doctrines are available. They are wrong. Mootness "encompasses circumstances that destroy the justiciability of a suit previously suitable for determination." *Loughlin v. United States*, 393 F.3d 155, 169 (D.C. Cir. 2004) (cleaned up). But as explained above, these plaintiffs' claims were not justiciable when they sued. *See Advanced Mgmt. Tech., Inc. v. FAA*, 211 F.3d 633, 636 (D.C. Cir. 2000) ("The claim may sound like one of mootness—a justiciable controversy existed but no longer remains—but the timing makes [the plaintiff's] problem one of standing.").

8

In any event, even if these doctrines were available, the Court is persuaded by another court's rejection of the same "voluntary cessation" and "capable of repetition, yet evading review" arguments in this context and adopts that reasoning in full. *See Milligan v. Blinken*, No. 20-cv-2631 (JEB), 2021 WL 3931880, at *4–6 (D.D.C. Sept. 2, 2021). Thus, no matter which framework applies—standing or mootness—this Court lacks jurisdiction to review these plaintiffs' claims about the proclamations.

### 2. These Plaintiffs Have Failed to State a Claim for Unreasonable Delay and Mandamus (Counts I and III)

Two claims asserted by these plaintiffs remain: one challenging Defendants' delay in adjudicating their visa applications under the APA (Count I) and the other seeking to compel Defendants to adjudicate their visas, which the Court construes as a request for mandamus (Count III). Plaintiffs have failed to state a claim for either.[3]

The APA "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time,' and authorizes a reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed.'" *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 49 (D.D.C. 2021) (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003)). To determine whether an agency has unreasonably delayed agency action under the APA, courts apply the six-factor test established in *Telecommunications*

---

[3] Plaintiffs point out that some courts have declined to evaluate claims of unreasonable delay at the motion to dismiss stage. ECF No. 10. at 17 & n.8. But "it is not uncommon for courts here to resolve unreasonable delay claims in visa adjudication cases on a Rule 12(b)(6) motion." *Liu v. Blinken*, 544 F. Supp. 3d 1, 10 n.6 (D.D.C. 2021) (collecting cases). In fact, one court has observed that "the weight of authority appears to cut" in favor of deciding "unreasonable-delay claims at the motion-to-dismiss stage before discovery." *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 50 (D.D.C. 2021). Given that, at this stage, "the Court is not determining whether there has been an unreasonable delay" but "whether plaintiffs' complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay," the Court will proceed to evaluate their delay related claims. *Id.* at 50 (cleaned up).

*Research and Action Center v. FCC* ("*TRAC*"), 750 F.2d 70 (D.C. Cir. 1984).  Under *TRAC*, courts must consider:

>   (1) the time agencies take to make decisions must be governed by a rule of reason;
>
>   (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
>   (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
>   (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
>   (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
>   (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."

*Id.* at 80 (cleaned up).

The first factor is "most important."  *In re Core Comms., Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008).  And it, along with the second factor, cuts in Defendants' favor.  "While Congress required the State Department to have a policy of adjudicating K-1 visas within 30 days of the receipt of all necessary documents from the applicant and the Immigration and Naturalization Service, it did not mandate a statutory deadline for K-1 visa adjudications."  *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 318 (D.D.C. 2020) (cleaned up); *see also Mohammad v. Blinken*, 548 F. Supp. 3d 159, 165 (D.D.C. 2021) ("'There is no congressional imposed timeline' for processing K-1 visa applications.") (quoting *Bagherian*, 442 F. Supp. 3d at 95).  Thus, the Court turns to case law for guidance.  *Milligan*, 502 F. Supp. 3d at 318 (cleaned up).  Courts "have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable."  *Id.* (cleaned up).  And they have routinely declined to find

that a two-year delay is unreasonable as a matter of law. *See Ghadami v. DHS*, No. 19-cv-00397 (ABJ), 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020) (collecting cases); *see also Skalka v. Kelly*, 246 F. Supp. 3d 147, 154 (D.D.C. 2017) (a two-year delay for the adjudication of processing an immigration visa "does not typically require judicial intervention"). Courts have also recognized that, over the past few years, the COVID-19 pandemic "contributed heavily to the slowdowns in visa processing all over the world." *Schwartz v. DHS*, No. CV 21-378 (JEB), 2021 WL 4133618, at *3 (D.D.C. Sept. 10, 2021).

As far as the record reflects, at this point the longest time that any of these plaintiffs has been waiting is about 22 months.[4] *See* ECF No. 16-1 at 5–9. Such delay is understandably frustrating. But it "does not approach the two- or five-year periods district courts have countenanced." *Schwartz*, 2021 WL 4133618, at *3. And courts considered those two-to-five-year delays *before* the pandemic-inducted global slowdown of visa processing. *See Sarlak v. Pompeo*, No. 20-cv-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) (collecting cases). Under these circumstances, the Court cannot find "that the Government's timeline for adjudicating [Plaintiffs'] application[s] lacks reason." *Khan v. Blinken*, No. 21-cv-1683 (JEB), 2021 WL 5356267, at *3 (D.D.C. Nov. 17, 2021) (stressing the "logistical challenges that COVID-19 has imposed").[5]

---

[4] Plaintiff Ribeiro's file was documentarily complete as of July 23, 2019—32 months ago—but Defendants explain that "a consular officer found her ineligible for a visa on multiple grounds and refused her visa in 2019." ECF No. 16-1 at 3. She was later allowed to reapply. *Id.* Thus, the Court understands that she and her spouse-to-be have not been waiting since July 23, 2019, but since she reapplied at some point later. Plaintiffs do not argue otherwise.

[5] *See also Zaman v. DHS*, No. 19-cv-3592 (ABJ), 2021 WL 5356284, at *6 (D.D.C. Nov. 16, 2021) ("The significant public health considerations impacting consular staff and the suspension of visa activities in Bangladesh are circumstances well beyond the agency's control, and they weigh in favor of defendants on the first two *TRAC* factors."); *Dastagir v. Blinken*, No. 20-cv-2286 (TNM), 2021 WL 2894645, at *4 (D.D.C. July 9, 2021) ("Issues like a pandemic and local government restrictions . . . offer sufficient rhyme and reason to explain the Government's response time." (cleaned up)).

The third and fifth factors cut in these plaintiffs' favor. Courts generally analyze these factors together, considering "Plaintiffs' interests, health, and welfare, and the prejudice to those interests from delay." *Liu*, 544 F. Supp. 3d at 12 (cleaned up). Here, the delayed application processing has caused these plaintiffs to suffer various harms, such as the "severe medical and psychological burdens" from being "separated from their loved ones," and "financial distress because the foreign beneficiar[ies] had left a job in anticipation of an imminent to the United States." ECF No. 14 ¶ 11. The Court is sympathetic to their harms and weighs these considerations in their favor. *See, e.g.*, *Zandieh v. Pompeo*, No. 20-cv-919 (JEB), 2020 WL 4346915, at *5 (D.D.C. July 29, 2020) (third and fifth factors favored plaintiffs due to harm from family separation).

The fourth factor, which asks the Court to analyze "the effect of expediting delayed action on agency activities of a higher or competing priority," heavily favors Defendants, though. *See TRAC*, 750 F.2d at 80. The Circuit has "refused to grant relief, even though all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *Mashpee*, 336 F.3d at 1100 (cleaned up). "Ordering Defendants to immediately schedule visa interviews for [these plaintiffs] and adjudicate their visas" would do exactly that. *Liu*, 544 F. Supp. 3d at 13 (cleaned up). "These sorts of judicial reorderings of agency priorities are inappropriate where the agency is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *Bagherian*, 442 F. Supp. 3d at 96 (cleaned up). Accounting for "the challenges presented by the COVID-19 pandemic, which has created unusual and extreme challenges for Defendants," only strengthens the logic of these precedents. *Liu*, 544 F. Supp. 3d at 13.

As for the sixth factor, these plaintiffs do not plausibly allege that Defendants "acted in bad faith in delaying action." *Gona v. USCIS*, No. 20-cv-3680 (RCL), 2021 WL 736810, at *5 (D.D.C. Feb. 25, 2021). They merely allege that "[t]he Brazilian Consulate is quite simply prioritizing other cases first." ECF No. 14 ¶ 54. The Court cannot reasonably infer from this allegation, or any others, "any bad faith or impropriety that would sway this factor in Plaintiffs' favor." *Liu*, 544 F. Supp. at 14.

In sum, these plaintiffs have not plausibly alleged an unreasonable delay in processing their visa applications. The Court is sympathetic to their unfortunate situation, but "delays stemming from resource-allocation decisions simply do not lend themselves to judicial reordering of agency priorities," particularly during a global pandemic. *Milligan*, 502 F. Supp. 3d at 319 (cleaned up).

Finally, because their APA claim fails, so too does their claim for mandamus relief. The standard for reviewing agency delay is "the same under both § 706(1) of the APA and the Mandamus Act." *Bagherian*, 442 F. Supp. 3d at 96 (quoting *Skalka*, 246 F. Supp. 3d at 152). Because these plaintiffs have failed to state a claim for unreasonable delay, they have also failed to allege a mandamus claim.

## IV. Conclusion

For all these reasons, the Court will grant Defendants' motion to dismiss. A separate order will issue.

/s/ Timothy J. Kelly  
TIMOTHY J. KELLY  
United States District Judge

Date: March 29, 2022